## UNITED STATES *v.* RAMSEY ET AL.

ERROR TO THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA.

No. 1061. Argued April 22, 1926.—Decided June 1, 1926.

1. The authority of the United States to punish crimes committed by or against tribal Indians in the "Indian country" (Rev. Stats. § 2145) in Oklahoma continued after the admission of that State as before. P. 469.
2. The term "Indian country" within the meaning of § 2145, applies to a restricted Osage Indian allotment. P. 470.
3. There is no difference in respect of the applicability of § 2145 between a "restricted" and a "trust" allotment. *Id.*

Reversed.

ERROR to a judgment of the District Court sustaining a demurrer to an indictment.

*Solicitor General Mitchell,* with whom *Assistant Attorney General Luhring* and *Mr. Roy St. Lewis* were on the brief, for the United States.

*Messrs. William S. Hamilton* and *S. P. Freeling,* with whom *Messrs. J. M. Springer, Edward C. Gross,* and *J. I. Howard* were on the brief, for defendants in error.

The allotment was not Indian country at the time of the commission of the alleged offense, within the purview of § 2145, Rev. Stats., or any other section of ch. 4 of the Act of June 30, 1834, relating to the government of the Indian country. *Bates* v. *Clark,* 95 U. S. 204; *United States* v. *Laribiere,* 93 U. S. 188; *Dick* v. *United States,* 208 U. S. 340; *United States* v. *Myers,* 206 Fed. 387; *Clairmont* v. *United States,* 225 U. S. 551; *United States* v. *Rickert,* 188 U. S. 432; *United States* v. *McCurdy,* 264 U. S. 483; *Bluejacket* v. *Johnson County,* 5 Wall. 737; *McCulloch* v. *Maryland,* 4 Wheat. 316; *Choate* v. *Trapp,* 224 U. S. 665; *Morgan* v. *Ward,* 224 Fed. 698; *United States* v. *Wright,* 229 U. S. 226; *United States* v. *Nice,* 241 U. S. 591; *Sunderland* v. *United States,* 266 U. S. 226; *United States* v. *Brown,* 8 Fed. (2d) 564.

Distinguishing *United States* v. *Pelican,* 231 U. S. 442; *Donnelly* v. *United States,* 228 U. S. 243; *United States* v. *Celestine,* 215 U. S. 278; *United States* v. *Thomas,* 151 U. S. 577; *Draper* v. *United States,* 164 U. S. 240; *United States* v. *McBratney,* 104 U. S. 621.

MR. JUSTICE SUTHERLAND delivered the opinion of the Court.

The defendants in error, two white men, were charged, by an indictment returned in the court below, with the murder of one Henry Roan, a full-blood Osage Indian and a legal member of the Osage Tribe, committed " in Osage County, in said district, in the Indian country and in and upon the reservation theretofore and then established by law of the United States for the Osage Tribe of Indians, on and in a certain tract of land therein which was then and there under the exclusive jurisdiction of the United States and comprised a restricted surplus allotment, theretofore made under and according to

the act of Congress approved June 28, 1906, . . . the title to which said allotment . . . was held in trust by the United States and was inalienable " by the allottee, who had never had issued to her a certificate of competency authorizing her to sell the allotment. The indictment is drawn under § 2145 R. S., which extends the general laws of the United States as to the punishment of crimes committed in any place within the sole and exclusive jurisdiction of the United States, to the Indian country, with certain exceptions not material here. The court below sustained a demurrer to this indictment upon the ground that the allotment described in the indictment as the *locus* of the crime was not Indian country within the meaning of § 2145. Thereupon, the construction of the statute upon which the indictment is drawn being involved, the case was brought here on writ of error under the Criminal Appeals Act of March 2, 1907, c. 2564, 34 Stat. 1246.

The authority of the United States under § 2145 to punish crimes occurring within the State of Oklahoma, not committed by or against Indians, was ended by the grant of statehood. *United States* v. *McBratney,* 104 U. S. 621, 624; *Draper* v. *United States,* 164 U. S. 240. But authority in respect of crimes committed by or against Indians continued after the admission of the state as it was before, *Donnelly* v. *United States,* 228 U. S. 243, 271, in virtue of the long-settled rule that such Indians are wards of the nation in respect of whom there is devolved upon the Federal Government " the duty of protection, and with it the power." *United States* v. *Kagama,* 118 U. S. 375, 384. The guardianship of the United States over the Osage Indians has not been abandoned; they are still the wards of the nation, *United States* v. *Osage County,* 251 U. S. 128, 133; *United States* v. *Nice,* 241 U. S. 591, 598; and it rests with Congress alone to determine when that relationship shall cease.

*Matter of Heff,* 197 U. S. 488, 499; *United States* v. *Celestine,* 215 U. S. 278, 290.

The sole question for our determination, therefore, is whether the place of the crime is Indian country within the meaning of § 2145. The place is a tract of land constituting an Indian allotment, carved out of the Osage Indian reservation and conveyed in fee to the allottee named in the indictment, subject to a restriction against alienation for a period of 25 years. That period has not elapsed, nor has the allottee ever received a certificate of competency authorizing her to sell. As pointed out in *United States* v. *Bowling,* 256 U. S. 484, 486, there are two modes by which Indians are prevented from improvidently disposing of their allotments. One is by means of a certificate, called a trust patent, by the terms of which the Government holds the land for a period of years in trust for the allottee with an agreement to convey at the end of the trust period. The other mode is to issue a patent conveying to the allottee the land in fee but prohibiting its alienation for a stated period. Both have the same effect so far as the power of alienation is concerned, but one is commonly called a trust allotment and the other a restricted allotment. The judgment of the court below turns upon this narrow difference.

In *United States* v. *Pelican,* 232 U. S. 442, a case involving the murder of an Indian upon a trust allotment, this court held (p. 449) that trust allotments retain " during the trust period a distinctively Indian character, being devoted to Indian occupancy under the limitations imposed by Federal legislation," and that they are embraced within the term " Indian country," as used in § 2145. But the opinion makes it clear that the difference between a trust allotment and a restricted allotment, so far as that difference may affect the status of the allotment as Indian country, was not regarded as important. The court said:

" The explicit provision in the act of 1897, as to allotments,* we do not regard as pointing a distinction but rather as emphasizing the intent of Congress in carrying out its policy with respect to allotments in severalty where these have been accompanied with restrictions upon alienation or provision for trusteeship on the part of the Government. . . . The allottees were permitted to enjoy a more secure tenure and provision was made for their ultimate ownership without restrictions. But, meanwhile, the lands remained Indian lands set apart for Indians under governmental care; and we are unable to find ground for the conclusion that they became other than Indian country through the distribution into separate holdings, the Government retaining control."

The essential identity of the two kinds of allotments—so far as the question here under consideration may be affected—was recognized in the *Bowling Case,* where it was said (p. 487) that in one class as much as the other " the United States possesses a supervisory control over the land and may take appropriate measures to make sure that it inures to the sole use and benefit of the allottee and his heirs throughout the original or any extended period of restriction." In practical effect, the control of Congress, until the expiration of the trust or the restricted period, is the same.

Since Congress possesses the broad power of legislating for the protection of the Indians wherever they may be within the territory of the United States, the question presented is not one of power but wholly one of statutory construction. Viewed from that premise, it would be

---

* This refers to c. 109, 29 Stat. 506, an act to prohibit the sale of intoxicating drinks to Indians. It provides that the term Indian country " shall include any Indian allotment, while the title to the same shall be held in trust by the Government, or while the same shall remain inalienable by the allottee without the consent of the United States, . . ."

quite unreasonable to attribute to Congress an intention to extend the protection of the criminal law to an Indian upon a trust allotment and withhold it from one upon a restricted allotment; and we find nothing in the nature of the subject matter or in the words of the statute which would justify us in applying the term Indian country to one and not to the other.

It follows that the judgment sustaining the demurrer to the indictment is erroneous and must be

*Reversed.*