STATE of Oklahoma, Appellant,

v.

**Harold Ed BURNETT, Michael Simpson, and Dale Lynn Jackson, Appellees.**

No. S–83–3.

Court of Criminal Appeals of Oklahoma.

Nov. 7, 1983.

Larry D. Stuart, Dist. Atty. for Osage County, for appellant.

Patrick A. Williams, Tulsa, on behalf of Dale Lynn Jackson.

Ronald H. Mook, Tulsa, on behalf of Harold Ed Burnett.

No appearance on behalf of Michael Simpson.

## OPINION

CORNISH, Judge:

The issue on this Rule VI appeal is whether restricted Osage allotment land is Indian country under federal law. We find that it is, and affirm the magistrate's order dismissing state murder charges arising out of a slaying on such land.

The defendants were charged in Osage County District Court with the first degree murder of a restricted Osage Indian. The defendants, with the exception of Simpson, are themselves Indians. The crime alleged-ly occurred at the residence of the victim on restricted Osage allotment land.

At preliminary hearing, the magistrate raised the issue of jurisdiction on his own motion. Based on the stipulations of the parties and the testimony of witnesses, the magistrate determined that the crime occurred on Indian country, outside the jurisdiction of the state court. This determination was affirmed by a District Court judge, and the State seeks review in this Court. Section VI, Rules of the Court of Criminal Appeals, 22 O.S.1981 Ch. 18, App.

"Indian country", for our purposes, means "all Indian allotments, the Indian titles to which have not been extinguished, including rights-of-way running through the same." 18 U.S.C. § 1151(c) (1976). The definition of Indian country in § 1151(c) is based on the holding of the Supreme Court in *United States v. Pelican,* 232 U.S. 442, 34 S.Ct. 396, 58 L.Ed. 676 (1914). See *In Re Carmen's Petition,* 165 F.Supp. 942, 945 (N.D.Cal.1958), aff'd, 270 F.2d 809, cert. den., 361 U.S. 934, 80 S.Ct. 375, 4 L.Ed.2d 355; Reviser's Notes, 18 U.S.C. § 1151; and 18 Ariz.L.Rev. 503, 510, Note 37.

In *Pelican,* the Supreme Court held that Indian trust allotments were Indian country. The Court reasoned that "the original reservation was Indian country simply because it had been validly set apart for the use of the Indians as such, under the superintendence of the government." *United States v. Pelican,* supra, 232 U.S. at 449, 34 S.Ct. at 399. The same considerations applied to the allotted lands, which remained lands set apart for the Indians under governmental care.

In *United States v. Ramsey,* 271 U.S. 467, 46 S.Ct. 559, 70 L.Ed. 1039 (1926), the Pelican case was extended to restricted Osage Indian allotments. The Court noted that the trust allotment and the restricted allotment were but alternative means for preventing improvident disposition of the allotment. The Court, quoting from *United States v. Bowling,* 256 U.S. 484, 41 S.Ct. 561, 65 L.Ed. 1054 (1921), declared the essential identity of the two methods:

[I]n one class as much as the other 'the United States possesses a supervisory control over the land and may take appropriate measures to make sure that it inures to the sole use and benefit of the allottee and his heirs throughout the original or any extended period of restriction.' In practical effect, the control of Congress, until the expiration of the trust or the restricted period, is the same.

*United States v. Ramsey,* 271 U.S. at 471, 46 S.Ct. at 560.

We regard *Ramsey* and *Pelican* as dispositive of the status of the lands at issue under § 1151(c). The State's suggestion that *Ramsey* misapplied *Pelican* due to differences in the trust and restricted allotment methods, even if properly before us, is without merit. As made clear by the discussion in *Ramsey,* under either method the land has been validly set apart for the use of the Indians as such, under the superintendence of the government, which is the test established in *Pelican.*

The State also suggests that *Ramsey* was decided at a time when the restrictions ran with the land, whereas the trend at present is to make the restrictions personal to the Indian, thus taking the present case out of § 1151(c). This is not well taken, for

> when Congress provided in Section 1151 that Indian country should include "all Indian allotments, the Indian titles to which have not been extinguished", it considered this description broad enough to encompass all Indian allotments while the title to same shall be held in trust by the Government, *or while the same shall remain inalienable by the allottee without the consent of the United States.*

*In Re Carmen's Petition,* 165 F.Supp. at 946. [Emphasis added.] Under whatever theory, the land at issue was inalienable as a matter of federal law, and we find that it was Indian country.

A finding that particular land constitutes Indian country ordinarily indicates the absence of state jurisdiction. *See e.g., C.M.G. v. State,* 594 P.2d 798 (Okl.Cr.1979), cert. den., 444 U.S. 992, 100 S.Ct. 524, 62 L.Ed.2d 421; *State v. Littlechief,* 573 P.2d 263 (Okl.

Cr.1978); *Decoteau v. District County Court For The Tenth Judicial District,* 420 U.S. 425, 95 S.Ct. 1082, 43 L.Ed.2d 300 (1975). But see *Goforth v. State,* 644 P.2d 114 (Okl.Cr.1982). However, the State suggests that, even if the land is Indian country, it has validly assumed jurisdiction over such lands in this State.

Federal law permits states such as Oklahoma to assume jurisdiction over Indian lands. However, affirmative action on the part of the state is required to effectuate the assumption of jurisdiction:

> Title 25 U.S.C. § 1321, ¶(a), (1970), passed in 1968, grants to the states consent to assume, with the consent of the Indians involved, jurisdiction to prosecute crimes committed in Indian country, and 25 U.S.C. § 1323 (1970), gives the consent of the United States to states to amend their constitutions or existing statutes to remove any legal impediments to the state assuming that jurisdiction. To date, the State of Oklahoma had made no attempt to repeal Art. I, § 3, of the Constitution of the State of Oklahoma, which prohibits state jurisdiction over Indian country, so the federal government still has exclusive jurisdiction over Indian country located within Oklahoma boundaries. See *State v. Littlechief,* Okl.Cr., 573 P.2d 263 (1978).

*C.M.G. v. State,* 594 P.2d at 799. A state constitutional amendment may not be necessary under subsequent federal case law. *Washington v. Confederated Bands and Tribes,* 439 U.S. 463, 493, 99 S.Ct. 740, 757, 53 L.Ed.2d 740 (1979). However, the State's assertion that the alleged exercise of jurisdiction by individual law enforcement officers and court officials constitutes a binding election is unpersuasive. The states must " 'manifes[t] by political action their willingness and ability to discharge their new responsibilities' " in order to make effective the assumption of jurisdiction. Id., at 486, 99 S.Ct. at 754, Note 30, quoting from *Kennerly v. District Court of Montana,* 400 U.S. 423, 91 S.Ct. 480, 27 L.Ed.2d 507 (1971). An assumption of jurisdiction over the Indian country could in-

volve considerable burdens, *Williams v. Lee*, 358 U.S. 217, 223, 79 S.Ct. 269, 272, 3 L.Ed.2d 251 (1959), and thus far, no one with the right and power to speak for and bind Oklahoma has done so.

The land in question is "Indian country" within the meaning of 18 U.S.C. § 1151(c) (1976), and outside the jurisdiction of the District Court. Accordingly, the order of the magistrate is AFFIRMED.

BUSSEY, P.J., and BRETT, J., concur.