FILED
United States Court of Appeals
Tenth Circuit

March 11, 2026

Christopher M. Wolpert
Clerk of Court

<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

THOMAS ROYE WAHPEKECHE,

      Petitioner - Appellant,

v.

LUKE PETTIGREW, Warden,

      Respondent - Appellee.

No. 23-6176

_____

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA
(D.C. No. 5:21-CV-01106-PRW)**

_____

**Submitted on the briefs[*]:**

Jason B. Wesoky, Ogborn Mihm, LLP, Denver, Colorado, for Petitioner-Appellant.

Gentner F. Drummond, Attorney General of Oklahoma and Tessa L. Henry, Assistant Attorney General, for Respondent-Appellee.

_____

Before **HARTZ**, **BACHARACH**, and **CARSON**, Circuit Judges.

_____

**BACHARACH**, Circuit Judge.

_____

---

[*]    Oral argument would not materially help us decide this appeal, so we have decided the appeal based on the briefs. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).

This case involves challenges to convictions for state crimes.[1] The petitioner, Mr. Thomas Roye Wahpekeche, claims that the state court lacked jurisdiction because he's an *Indian* and the crimes took place in *Indian country*.[2]

Land can constitute *Indian country* through status as an Indian reservation, a dependent Indian community, or an Indian allotment. *See* 18 U.S.C. § 1151(a)–(c). Considering these types of Indian country, we conclude that

- Congress disestablished the pertinent reservation and

- Mr. Wahpekeche waived his characterization of the land as a dependent Indian community or an Indian allotment.

---

[1]    Mr. Wahpekeche was convicted of

- first-degree rape of a victim younger than fourteen (Okla. Stat. tit. 21, § 1114),

- forcible sodomy (Okla. Stat. tit. 21, § 888),

- lewd or indecent acts to a child younger than sixteen (Okla. Stat. tit. 21, § 1123(A)(2)),

- rape by instrumentation (Okla. Stat. tit. 21, § 1114(A)(7)), and

- commission of a lewd act in front of a minor (Okla. Stat. tit. 21, § 1123(A)(5)).

[2]    Mr. Wahpekeche alleges membership in the Kickapoo Tribe and the presence of at least some "Indian blood." The State takes no position on Mr. Wahpekeche's status as an Indian.

**1.     We decline to vacate the certificate of appealability.**

Mr. Wahpekeche challenges not only the existence of state-court jurisdiction but also the rulings on his claims of ineffective assistance of counsel, denial of due process, and violation of a federal statute. *See* pp. 15–16, below. He could appeal the rulings only if a judge were to issue a certificate of appealability. 28 U.S.C. § 2253(c)(1)(A). So he requested a certificate and obtained one "on all issues." Order (10th Cir. Nov. 20, 2024).

The State asks us to vacate the certificate, pointing out that

- we generally disfavor blanket certificates of appealability on all issues, *see Thomas v. Gibson*, 218 F.3d 1213, 1219 n.1 (10th Cir. 2000) (stating that "'blanket' [certificates of appealability] . . . are at odds with the statutory provision governing appeals in § 2254 petitions"), and

- we have occasionally vacated certificates of appealability as improperly granted, *e.g.*, *Childers v. Crow*, 1 F.4th 792, 797–801 (10th Cir. 2021).

But we have also recognized that

- a certificate of appealability "is a screening device, helping to conserve judicial and (prosecutorial) resources" and

- "there is little point in scrutinizing the certificate" after the parties have briefed the merits.

*United States v. Talk*, 158 F.3d 1064, 1068 (10th Cir. 1998) (quoting *Young v. United States*, 124 F.3d 794, 799 (7th Cir. 1997)). Given the extensive briefing on the merits, we decline to reconsider the issuance of a certificate on all issues.

3

## 2.    Congress disestablished the Citizen Potawatomi reservation.

*Indian country* can exist through a reservation, and no one doubts that the Citizen Potawatomi tribe had a reservation at one time. 18 U.S.C. § 1151(a); *Citizen Band Potawatomi Indian Tribe of Okla. v. Collier*, 142 F.3d 1325, 1327 (10th Cir. 1998). But in 1891, Congress enacted a statute addressing the status of this reservation. The question is whether this statute *disestablished* the reservation.[3]

The Supreme Court explained in *McGirt v. Oklahoma* that *disestablishment* requires clear congressional expression of an "intent to [disestablish], commonly with an explicit reference to cession or other language evidencing the present and total surrender of all tribal interests." 591 U.S. 894, 904 (2020) (cleaned up). So we consider the language in the 1891 statute.

There Congress recognized that the Citizen Potawatomi Tribe had agreed to "cede, relinquish, and forever and absolutely surrender to the United States all their claim, title and interest of every kind and character in and to [a tract of land described in detail]." Act of March 3, 1891, § 8, art. I, 26 Stat. 989, 1016. The statute described the tribe's surrender of

---

[3]    Federal law restricts the availability of habeas relief when the state appellate court rejected a claim after adjudicating it on the merits. 28 U.S.C. § 2254(d)(1)–(2). The parties disagree about the applicability of this restraint: The State argues that the restraint applies; Mr. Wahpekeche argues that it doesn't. For the sake of argument, we assume that Mr. Wahpekeche is right.

interests as *forever* and *absolute*, *id.*, and the Supreme Court has characterized this language as sufficiently clear to disestablish a reservation, *DeCoteau v. Dist. Cnty. Court for Tenth Judicial Dist.*, 420 U.S. 425, 439 & n.22 (1975) (citing 26 Stat. 1016, 1019).

Given that characterization of the statutory language, we've referred to the Citizen Potawatomi reservation as a thing of the past. *Citizen Band Potawatomi Indian Tribe of Okla. v. Collier*, 142 F.3d 1325, 1326–27, 1334 (10th Cir. 1998) (referring to the Citizen Potawatomi reservation as a "former" reservation). And scholars have often recognized termination of the Citizen Potawatomi Tribe's reservation. Mark Welliver, *CP 87 and CP 100: Allotment and Fractionation within the Citizen Potawatomi Nation*, 2 Tribal L.J. 1, 10 (2001) ("The immediate impact of the [1890] Citizen Potawatomi Agreement was the termination of the reservation . . . ."); Berlin B. Chapman, *The Pottawatomie and Absentee Shawnee Reservation*, 24 Chronicles of Oklahoma 293, 305 (1946) ("In 1891 Congress ratified agreements with the Pottawatomies and Absentee Shawnees under which allotment was completed and the reservation dissolved."); Lisa Kraft, *Thrice Purchased: Acquisition and Allotment of the Citizen Potawatomi Reservation*, 86 Chronicles of Oklahoma 64, 80–82 (2008) (stating that the 1891 statute terminated the Citizen Potawatomi reservation).

Despite this chorus of authority, Mr. Wahpekeche argues that the district court should have considered *disestablishment* under the framework

5

set out in *Solem v. Bartlett*, 465 U.S. 463 (1984). In *Solem*, the Court considered not only statutory language, but also surrounding events. *Solem*, 465 U.S. at 471; *see also Murphy v. Royal*, 875 F.3d 896, 920–21 (10th Cir. 2016) (discussing the framework under *Solem*), *aff'd sub nom. Sharp v. Murphy*, 591 U.S. 977 (2020).

These events include the government's payment of $160,000 in exchange for the tribe's "relinquishment of all title, claim, and interest of every kind and character in an[d] to said lands." 1891 Act, 26 Stat. 989, 1016, 1018; *see* H.R. Rep. No. 3481, 51st Cong., 2d Sess. 2 (1891) (characterizing the payment of $160,000 as compensation to the Citizen Band of Potawatomi Indians "for the relinquishment of whatever right the Indians might have"). That payment, coupled with the statutory language of cession, created "an almost insurmountable presumption that Congress meant for the tribe's reservation to be diminished." *Solem v. Bartlett*, 465 U.S. 463, 470–71 (1984); *see also South Dakota v. Yankton Sioux Tribe*, 522 U.S. 329, 357 (1998) ("The 1894 Act contains the most certain statutory language, evincing Congress' intent to diminish the Yankton Sioux Reservation by providing for total cession and fixed compensation."). Mr. Wahpekeche hasn't rebutted that heavy presumption of congressional intent to diminish the reservation.

The resulting question is the scope of that diminution: The State argues that the diminution did away with the entire reservation, and

Mr. Wahpekeche contends that the 1891 statute left part of the reservation intact. For this contention, Mr. Wahpekeche says that the statute ceded only excess lands of the reservation, which consisted of roughly 575,870.42 acres. Pet'r's Supp. Opening Br. at 23. But that was the acreage of the entire reservation. *See* H.R. Rep. No. 51-3481, at 1 (1891) (stating that the "Citizen Band of Pottawatomie Indians are now and . . . have been, occupying a reservation in the Indian Territory (now within the territorial limits of Oklahoma about 30 miles square, and containing an area of 575,870.42 acres)"); Lisa Kraft, *Acquisition and Allotment of the Citizen Potawatomi Reservation*, 86 Chronicles of Oklahoma 64, 81–82 (2008) (stating that the Citizen Potawatomi reservation originally consisted of 575,870 acres).

Though the 1891 statute appeared to cover all the land in the reservation, Mr. Wahpekeche points out that the Supreme Court has referred twice to the reservation in the 20th and 21st centuries[4]:

---

[4]    Mr. Wahpekeche also points to a summary disposition in *Bentley v. Oklahoma*, 141 S. Ct. 191 (2020) (Mem.), stating that the remand implied the continued existence of the Citizen Potawatomi reservation. But the summary disposition stated only that the Court was remanding based on *McGirt*; nothing suggests consideration of an issue involving disestablishment of the reservation. *See United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 37–38 (1952) (stating that a prior opinion's implicit resolution of an issue doesn't constitute "binding precedent" when the issue wasn't discussed in the opinion or raised by the parties).

7

1.  *Oklahoma Tax Commission v. Citizen Band Potawatomi Indian Tribe of Oklahoma*, 498 U.S. 505 (1991); and

2.  *C & L Enterprises, Inc. v. Citizen Band Potawatomi Indian Tribe of Oklahoma*, 532 U.S. 411 (2001).

From these references, Mr. Wahpekeche assumes that the Supreme Court must have thought that the tribe still had a reservation. But neither opinion discusses disestablishment or the continued existence of a reservation. And "questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." *Webster v. Fall*, 266 U.S. 507, 511 (1924).

Because these references don't constitute applicable precedents, we conclude that the 1891 statute unambiguously disestablished the entire reservation.

**3.      Mr. Wahpekeche's remaining jurisdictional arguments were unpreserved or unexplained.**

Mr. Wahpekeche raises three other challenges to the state court's jurisdiction:

1.  His crimes occurred in a dependent Indian community.

2.  His crimes occurred on allotted land.

3.  The Oklahoma Enabling Act deprived the state court of jurisdiction.

In our view, Mr. Wahpekeche didn't preserve the first two arguments and hasn't explained the third.

8

### a.    Mr. Wahpekeche waived an argument that his crimes had occurred in a dependent Indian community.

The first argument involves the possible existence of a *dependent Indian community*. Status as a *dependent Indian community* would have rendered the land *Indian country*. *See* 18 U.S.C. § 1151(b). But Mr. Wahpekeche's habeas petition didn't mention the possible existence of a dependent Indian community. And in Mr. Wahpekeche's brief supporting his habeas petition, he mentioned a dependent Indian community only when describing an earlier argument made in state court. R. vol. 1, at 85 (stating that Mr. Wahpekeche had earlier pointed out that the community of Little Axe was a *dependent Indian community*). But Mr. Wahpekeche didn't say in either the habeas petition or supporting brief that he was continuing to characterize the land as a dependent Indian community.

This characterization surfaced in federal court for the first time when Mr. Wahpekeche objected to the magistrate judge's recommendation. And "[i]ssues raised for the first time in objections to the magistrate judge's recommendation are deemed waived." *Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996).[5]

---

[5]    In the objection, Mr. Wahpekeche also argued that the Absentee Shawnee tribe enjoyed exclusive jurisdiction because he had bought his home from the Absentee Shawnee Tribal Housing Authority. On appeal, Mr. Wahpekeche theorizes that the crimes took place in a dependent Indian community. But Mr. Wahpekeche failed to preserve this theory in his habeas petition. *See Owens v. Trammell*, 792 F.3d 1234, 1245–46 (10th Cir. 2015).

In response, Mr. Wahpekeche contends that the state court promised that he could raise jurisdictional arguments any time. He bases this contention on the state district court's observation that he could raise the issue with the Oklahoma Court of Criminal Appeals.[6] But the state district court didn't tell Mr. Wahpekeche that he could bypass procedural requirements in federal court.

> **b.    Mr. Wahpekeche didn't preserve an argument that his crimes had occurred on allotted land.**

Mr. Wahpekeche also argues that the state court lacked jurisdiction because the crimes had occurred on allotted land. Continued status as an allotment would render the land *Indian country*. *See* 18 U.S.C. § 1151(c). But Mr. Wahpekeche didn't preserve an argument involving status as an allotment.

---

[6]    Following arguments on the jurisdictional issue, the trial court ruled against Mr. Wahpekeche and told his attorney: "I will reserve all of the objections for appeal with regard to that issue." R. vol. 2, at 955. This statement suggested that Mr. Wahpekeche had properly preserved the issue. When the issue reappeared just before sentencing, the trial court again ruled against Mr. Wahpekeche and said:

- "You may reserve all of your appeal rights with regard to that decision."

- "I am going to allow the defense to reserve any argument they want to make on that."

*Id.* at 979.

10

To preserve this argument, Mr. Wahpekeche needed to object to the magistrate judge's recommendation by focusing specifically "on the factual and legal issues that [were] truly in dispute." *United States v. 2121 E. 30th St.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Mr. Wahpekeche did make an allotment argument in the habeas petition. But the magistrate judge rejected this argument, and Mr. Wahpekeche did not challenge that part of the magistrate judge's report. Instead, Mr. Wahpekeche referred to an allotment only to show continuation of the reservation. As a result, the district judge construed Mr. Wahpekeche's jurisdictional claims to involve only the status of the reservation.

Given Mr. Wahpekeche's failure to raise the allotment issue when objecting to the magistrate judge's report, we wouldn't ordinarily consider granting relief on this issue. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991). But we may consider granting relief when the interests of justice require review. *Morales-Fernandez v. I.N.S.*, 418 F.3d 1116, 1119 (10th Cir. 2005). In assessing the interests of justice, we apply the plain-error standard. *Id.* at 1122. Under this standard, Mr. Wahpekeche bears the burden of proving not only that the magistrate judge had erred but also that the error would be clear or obvious. *See United States v. B.N.M.*, 107 F.4th 1152, 1169–70 (10th Cir. 2024).

11

To apply this standard, we must consider whether the magistrate judge clearly or obviously erred in determining that the land had lost its status as an allotment. This status could involve either a *trust allotment* or a *restricted allotment. Miami Tribe of Okla. v. United States*, 656 F.3d 1129, 1133 n.4 (10th Cir. 2011). In a *trust allotment*, the government

- conveys land in trust for the allottee's sole use during a specified period and

- grants an unrestricted fee when that period ends.

*Id.* In a *restricted allotment*, the government conveys the land through a patent, which allows the allottee to hold the land in fee with a restriction on alienation. *Id.*

Here the government appeared to create a trust allotment by establishing a trust for the land and designating the beneficiaries. The trust allotment "retain[ed] . . . a distinctively Indian character" "during the trust period." *United States v. Pelican*, 232 U.S. 442, 449 (1914). But "the Secretary of the Interior [had] discretion to remove allotted land from trust status and to issue fee simple patents . . . ." *Yankton Sioux Tribe v. Podhradsky*, 606 F.3d 994, 1000 (8th Cir. 2010). So the trust allotment would end if the government were to allow a purchaser to obtain a fee simple patent. *Larkin v. Paugh*, 276 U.S. 431, 439 (1928); *Cohen's Handbook of Federal Indian Law* § 18.03[4][a][ii], at 1174 (2024 ed.).

The magistrate judge characterized the continued status of the allotment as a factual matter and resolved the issue against Mr. Wahpekeche, finding that the land had lost its status as an allotment before his purchase. R. vol. 2, at 954–55.[7] This factual finding was presumptively correct under federal law, 28 U.S.C. § 2254(e)(1), and the magistrate judge concluded that Mr. Wahpekeche hadn't overcome the presumption, R. vol. 4, at 234–36.

If the magistrate judge had erred in this conclusion, the error wouldn't have been clear or obvious given the trial testimony and incomplete title history. A tribal officer testified that Mr. Wahpekeche's land didn't lie in any of the county's tribal trust land. Similarly, the title history didn't show the trust status when the crimes had taken place.

Mr. Wahpekeche argues that no one could remove the land from trust status by obtaining a patent in fee because ownership of the land had come with restrictions on alienation.[8] But the Department of Interior stated twice that there were "no reservations or withdrawals covering" the land.

---

[7]    Similarly, the state appellate court concluded that the record doesn't support a claim that Mr. Wahpekeche's land was part of an allotment. R. vol. 2, at 152–53.

[8]    Restrictions on alienation exist with both a trust allotment and restricted allotment. *United States v. Ramsey*, 271 U.S. 467, 470 (1926).

R. vol. 4, at 184–85.[9] And Mr. Wahpekeche refers only to his own purchase in 2013 and a sale 102 years earlier. He doesn't cite or provide any evidence regarding the effect of various sales during the 102-year period. So any possible error by the magistrate judge wouldn't have been *plain*. And absent a plain error, Mr. Wahpekeche waived his allotment argument by failing to raise the issue when objecting to the magistrate judge's report.

### c.    Mr. Wahpekeche does not explain how the Oklahoma Enabling Act deprived the state court of jurisdiction.

Mr. Wahpekeche also argues that the state court lacked jurisdiction because of the Oklahoma Enabling Act.[10] This Act states "[t]hat the people inhabiting said proposed State do agree and declare that they forever disclaim all right and title in or to . . . all lands lying within [the State]

---

[9]    The first reference appears to relate to a geological survey. R. vol. 4, at 184. But the second reference appears separately from the geological survey, explaining a recommendation for the Department of Interior to approve the deed. *Id.* at 185.

[10]    Mr. Wahpekeche also claims that his convictions violated the Oklahoma Constitution. Habeas relief must be based on a violation of the federal constitution, not a state constitution. *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).

Granted, the Oklahoma Constitution could conceivably affect Mr. Wahpekeche's title, which could in turn bear on characterization of the property as an allotment. But Mr. Wahpekeche doesn't argue that the Oklahoma Constitution supports status as an allotment.

14

owned or held by any Indian, tribe, or nation." Act of June 16, 1906, 34 Stat. 267, 270.

Mr. Wahpekeche has not explained the meaning of the statutory language or said why the Oklahoma Enabling Act deprived the state court of jurisdiction. At times, he implies that the Act refers to all Oklahoma land that had been held by a Native American or tribe. At other times, he suggests

- that the Act shows the existence of the Citizen Potawatomi reservation or

- that the crimes occurred in a dependent Indian community or on allotted land.

In any case, Mr. Wahpekeche has not explained how the Act deprived the state court of jurisdiction. Absent such an explanation, he hasn't shown an error involving application of the Act.

**4.    Mr. Wahpekeche failed to properly preserve his other claims.**

Mr. Wahpekeche also presents five other claims:

1.    The State's investigation violated the Indian Child Welfare Act.

2.    Mr. Wahpekeche's trial counsel was ineffective in failing to challenge the state court's jurisdiction.

3.    The State improperly questioned him after he had requested counsel.

4.    The State violated due process by failing to properly store evidence.

15

5.     The prosecutor violated due process by invoking a rape-shield law and curtailing Mr. Wahpekeche's presentation of a defense.[11]

In state court, Mr. Wahpekeche never raised the second or fourth claim (ineffective assistance of trial counsel or failure to properly store evidence).

Mr. Wahpekeche did raise the first and third claims in state court, but not in a procedurally proper way. For example, he raised these claims when he appealed the denial of post-conviction relief. But that appeal was late and dismissed as out of time. Mr. Wahpekeche obtained leave to appeal out of time, which allowed him to reassert the first and third claims. But he didn't take the next step of reasserting these claims. So the state appellate court never had a chance to address the first or third claim in a

---

[11]     The State argues that Mr. Wahpekeche's counsel waived these claims by declining to address them in his supplemental opening brief. A waiver takes place when a party deliberately considers an issue and intentionally decides to forgo it. *Tesone v. Empire Mktg. Strategies*, 942 F.3d 979, 991 (10th Cir. 2019).

Mr. Wahpekeche's counsel never said anything to suggest a waiver of his client's non-jurisdictional arguments. The order for additional briefing allowed the attorney to file a "supplemental Opening brief." Order at 2 (10th Cir. Nov. 20, 2024) ("Appellant, through appointed counsel, may file a supplemental opening brief within 40 days of the date of this order."). In allowing a supplemental brief, the order didn't suggest that the attorney would waive Mr. Wahpekeche's earlier arguments by declining to reassert them.

procedurally proper appeal.[12] *See Coleman v. Thompson*, 501 U.S. 722, 730–31 (1991) (stating that a habeas petitioner must satisfy the state's procedural requirements for purposes of exhaustion).

For the fifth claim, Mr. Wahpekeche alleged that the state prosecutor had violated due process by using a rape shield law to urge exclusion of relevant evidence. R. vol. 1, at 55–57. He did mention the rape shield law in state court when he appealed his convictions. R. vol. 2, at 183–89. But in that appeal, he used the rape shield law only to claim ineffectiveness of counsel, not to claim a denial of due process. *See id.*; *see also* R. vol. 4, at 244–45 (magistrate judge's explanation of the differences between Mr. Wahpekeche's claims in state court and in support of habeas relief).

Given the differences between the challenges in state and federal court, Mr. Wahpekeche failed to exhaust the five claims. *See Dever v. Kan. State Penitentiary*, 36 F.3d 1531, 1534 (10th Cir. 1994). Though Mr. Wahpekeche could ordinarily try to exhaust the claims now, the state appeals court would undoubtedly regard all of the claims as waived. Okla. Stat. tit. 22, § 1086; *see Fontenot v. Crow*, 4 F.4th 982, 1024 (10th Cir.

---

[12] The appeal was dismissed because of an error in the clerk's office for the state district court. Because Mr. Wahpekeche wasn't at fault for the dismissal, he argues that he couldn't have known that he would need to reassert arguments that he had presented earlier. But when Mr. Wahpekeche obtained leave to appeal out of time, the state appeals court told him that he needed to file a new supporting brief. R. vol. 2, at 765–66.

2021). So the failure to exhaust the claims would ordinarily trigger an anticipatory procedural bar. *See Anderson v. Sirmons*, 476 F.3d 1131, 1139 n.7 (10th Cir. 2007) ("Anticipatory procedural bar occurs when the federal courts apply procedural bar to an unexhausted claim that would be procedurally barred under state law if the petitioner returned to state court to exhaust it." (internal quotation marks omitted)).

Mr. Wahpekeche disputes an anticipatory procedural bar, arguing that (1) the State conceded exhaustion by addressing all the claims on their merits, (2) the magistrate judge shouldn't have considered exhaustion sua sponte, and (3) he showed a fundamental miscarriage of justice. We reject these arguments.

First, the State didn't concede exhaustion. To the contrary, the State

- noted that it was addressing the merits even "where claims [were] clearly not properly exhausted" and

- argued that Mr. Wahpekeche had not exhausted the first four claims.

R. vol. 2, at 54, 117, 128–29, 135.

Second, the magistrate judge didn't err by considering exhaustion sua sponte. This issue involves the fifth claim (violation of the rape-shield law and curtailment of a defense). For this claim, the State didn't raise exhaustion. But the magistrate judge raised exhaustion sua sponte, concluding that Mr. Wahpekeche hadn't previously alleged a denial of due process.

18

Mr. Wahpekeche argues that the magistrate judge shouldn't have considered exhaustion sua sponte. But "[s]ua sponte consideration of exhaustion of state remedies . . . is explicitly permitted by Supreme Court precedent." *United States v. Mitchell*, 518 F.3d 740, 746 n.8 (10th Cir. 2008) (citing *Granberry v. Greer*, 481 U.S. 129, 133 (1987) and *Caspari v. Bohlen*, 510 U.S. 383, 389 (1994)).

Granted, the federal district court needed to give Mr. Wahpekeche "a fair opportunity to present his position." *Wood v. Milyard*, 566 U.S. 463, 472 (2012). But the court did so, giving Mr. Wahpekeche a chance to object to the magistrate judge's report. *See Magouirk v. Phillips*, 144 F.3d 348, 359 (5th Cir. 1998) (holding that the opportunity to object to a magistrate judge's invocation of procedural default qualified as adequate "notice and a reasonable opportunity to oppose application of the procedural default doctrine"); *Paez v. Sec'y, Fla. Dep't of Corr.*, 947 F.3d 649, 655 (11th Cir. 2020) (adopting the Fifth Circuit's reasoning in *Magouirk* to uphold a magistrate judge's consideration of timeliness).[13]

Finally, Mr. Wahpekeche hasn't overcome the anticipatory procedural bar. To do so, he needed to show (1) cause and prejudice or (2) a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S.

---

[13] Mr. Wahpekeche did object to the magistrate judge's report. But his only objection was that the court should not reach the issue sua sponte given the State's purported waiver.

722, 750 (1991). Mr. Wahpekeche tries to show a fundamental miscarriage of justice through an affidavit from his son, who testified for the prosecution. In the affidavit, the son states that he thinks his father is innocent and that an adverse witness was coached. These statements don't establish a fundamental miscarriage of justice. *See McQuiggin v. Perkins*, 569 U.S. 383, 401 (2013) (stating that a showing of a fundamental miscarriage of justice requires "evidence of innocence so strong that a court cannot have confidence in the outcome unless the court is also satisfied that the trial was free of nonharmless constitutional error" (citations omitted)).

Given the anticipatory procedural bar, the district court couldn't grant habeas relief on the five claims.

\* \* \*

We conclude that Congress disestablished the reservation, Mr. Wahpekeche didn't preserve his characterization of the land as an allotment or a dependent Indian community, and an anticipatory procedural bar prevents habeas relief on the five other claims. So we affirm the denial of habeas relief.