UNITED STATES of America,

v.

James BURNS, Defendant.

UNITED STATES of America,

v.

Roderick COOK, Defendant.

UNITED STATES of America,

v.

Rudolph HART and Renee Hart, Defendants.

UNITED STATES of America,

v.

Anthony LAUGHING and Gerald Laughing, Defendants.

UNITED STATES of America,

v.

David MAINVILLE, Defendant.

UNITED STATES of America,

v.

William SEARS, Defendant.

UNITED STATES of America,

v.

Eli TARBELL, Defendant.

UNITED STATES of America,

v.

Paul TATLOCK and Tarek Tatlock, a/k/a Paul Tatlock, Jr., Defendants.

Nos. 89–CR–146 to 89–CR–151, 89–CR–153 and 89–CR–154.

United States District Court, N.D. New York.

Nov. 15, 1989.

Frederick J. Scullin, Jr., U.S. Atty., Syracuse, N.Y., for U.S.; John Brunetti, Asst. U.S. Atty., of counsel.

Vaughn Aldrich, Hogansburg, N.Y., for defendants Paul Tatlock, Mainville, Sears, Cook and James Burns.

John Piasecki, Malone, N.Y., for defendant Paul Tatlock, Jr. a/k/a Tarek Tatlock.

Emil M. Rossi, Syracuse, N.Y., for defendants Tarbell, Rudolph and Renee Hart, and Anthony Laughing; Michael J. Vavonese, of counsel.

Wiles & Fahey, Syracuse, N.Y., for defendant Renee Hart; Joseph E. Fahey, of counsel.

Domina Gerrard Copple & Stratton, Omaha, Neb., for defendant Gerald Laughing; John Peebles, of counsel.

## MEMORANDUM–DECISION AND ORDER

McCURN, Chief Judge.

### Introduction

All of the defendants in these criminal matters have been indicted on federal charges of either conducting an illegal gambling business, 18 U.S.C. § 1955, the unlawful use and possession of gambling devices within Indian territory, 15 U.S.C. §§ 1175 and 1176, or knowingly advancing or profiting from unlawful gambling activity within Indian country, 18 U.S.C. § 1166(b). Various other charges have been asserted against a number of the defendants arising out of the efforts of the State Police to arrest certain defendants or seize property pursuant to warrants. This memorandum-decision addresses some of defendants' pre-trial motions to dismiss the indictment which, though denied by this court in a bench decision on November 6, 1989, warrant further elaboration. These motions will be discussed in turn.

### The Indictments

(1) 89–CR–148. *William John Sears* has been separately indicted for one count of knowingly possessing and using gambling devices consisting of slot machines within Indian country on or about December 16, 1987, in violation of 15 U.S.C. §§ 1175 and 1176.

(2) 89–CR–149. *Roderick Alex Cook* has been separately indicted for one count of knowingly possessing and using gambling devices consisting of slot machines within Indian country on or about December 16, 1987, in violation of 15 U.S.C. §§ 1175 and 1176.

(3) 89–CR–150. *Paul A. Tatlock and Paul ("Tarek") Tatlock* have been indicted together. There are five counts in the superseding indictment only four of which assert claims against Paul ("Tarek") Tatlock Jr. *Count I* asserts that Paul A. Tatlock possessed and used gambling devices consisting of slot machines within Indian country on or about December 16, 1987, in violation of 15 U.S.C. §§ 1175 and 1176. *Count II* asserts both Paul A. Tatlock and Paul ("Tarek") Tatlock Jr. acting in concert together violated 15 U.S.C. §§ 1175 and 1176 by unlawfully using and possessing slot machines within Indian country on June 7, 1989. *Count III* charges both defendants with the operation of an illegal gambling business from April 10th to July 20, of 1989, in violation of 18 U.S.C. § 1955(a); it is asserted that the gambling operation was prohibited by New York Penal Law §§ 225.05 and 225.-30(1)(2)(3)—a necessary element of a § 1955 claim. *Count IV* asserts that both Tatlock defendants acted in concert on July 7, 1989, to knowingly profit from the operation of black jack tables within Indian country in violation of 18 U.S.C. § 1166(b) as well as New York Penal Law § 225.05. *Count V* charges the Tatlocks with acting in concert to unlawfully use and possess slot machines within Indian country on July 7, 1989, in violation of 15 U.S.C. §§ 1175 and 1176.

(4) 89–CR–153. *David Mainville* has had a superseding indictment issued against him which alleges three independent counts. *Count I* alleges that Mainville owned and operated an illegal gambling business from on or about June 6th to July 20th of 1989, in violation of 18 U.S.C. § 1955(a); this count of the indictment asserts that Mainville's gambling operation was prohibited by New York Penal Law §§ 225.05 and 225.30(1)–(3). *Count II* alleges that Mainville did knowingly advance or profit from unlawful gambling activity within Indian country on July 7, 1989, in violation of 18 U.S.C. § 1166(b) as well as New York Penal Law § 225.05. *Count III* alleges that on or about July 7, 1989, Mainville unlawfully used and possessed slot machines within Indian country in violation of 15 U.S.C. §§ 1175 and 1176.

(5) 89–CR–147. *James Joseph Burns* has been indicted on one count of knowing-

ly using and possessing slot machines within Indian country on December 16, 1987, in violation of 15 U.S.C. §§ 1175 and 1176.

(6) 89–CR–146. *Anthony Laughing* and *Gerald Laughing* have been indicted together. There are nine counts in the superseding indictment, three of which assert claims against both defendants. *Count I* charges Anthony Laughing with use and possession of gambling devices consisting of slot machines within Indian country on or about June 6, 1989, in violation of 15 U.S.C. §§ 1175 and 1176. *Count II* charges Anthony and Gerald Laughing with the operation of an illegal gambling business from December 27, 1988 to July 20, 1989, in violation of 18 U.S.C. § 1955; it is asserted that the gambling operation was prohibited by New York Penal Law Sections 225.05 and 225.30(1)(2) and (3)—a necessary element of a Section 1955 claim. *Count III* asserts that Anthony and Gerald Laughing, acting in concert, knowingly profited from unlawful gambling activity consisting of the operation of black jack and dice tables on or about July 8, 1989, in violation of 18 U.S.C. § 1166(b) and 18 U.S.C. § 2, and New York Penal Law Section 225.05. *Count IV* charges Anthony and Gerald Laughing with use and possession of gambling devices consisting of slot machines within Indian country on or about July 8, 1989, in violation of 15 U.S.C. §§ 1175 and 1176. *Count V* asserts that Anthony Laughing removed merchandise to prevent the seizure of said merchandise on or about July 20, 1989, in violation of 18 U.S.C. § 2232(a). *Count VI* charges that Anthony Laughing knowingly conducted an illegal gambling business from August 19, 1989 to September 21, 1989, in violation of 18 U.S.C. § 1955 and New York Penal Law Sections 225.05 and 225.30(1)(2) and (3). *Count VII* charges Anthony Laughing with use and possession of gambling devices consisting of slot machines within Indian country on or about August 21, 1989, in violation of 15 U.S.C. §§ 1175 and 1176. *Count VIII* asserts that Anthony Laughing knowingly advanced or profited from unlawful gambling activity on August 21, 1989, in violation of 18 U.S.C. § 1166(b) and 18 U.S.C. § 2, and New York Penal

Law Section 225.05. *Count IX* charges Anthony Laughing with forcibly resisting and interfering with officers of the New York State Police acting in cooperation with special agents of the FBI in executing an arrest warrant, in violation of 18 U.S.C. § 111(a)(1) and 18 U.S.C. § 1114.

(7) 89–CR–151. *Eli Tarbell* has been indicted on three separate counts of use and possession of gambling devices consisting of slot machines within Indian country on December 16, 1987, September 14, 1988, and June 6, 1989, in violation of 15 U.S.C. §§ 1175 and 1176.

(8) 89–CR–154. *Rudolph and Renee Hart* are indicted together. *Count I* of the superseding indictment charges that Harts with conducting an illegal gambling business from February 24, 1989 to July 20, 1989, in violation of 18 U.S.C. §§ 1955(a) and New York Penal Law Sections 225.05 and 225.30(1)(2) and (3). *Count II* asserts that the Harts knowingly advanced and profited from unlawful gambling activity within Indian country on July 7, 1989, in violation of 18 U.S.C. § 1166(a) and 18 U.S.C. § 2, and New York Penal Law Section 225.05. *Count III* charges the Harts with use and possession of gambling devices consisting of slot machines within Indian country on July 7, 1989, in violation of 15 U.S.C. §§ 1175 and 1176.

## Discussion

### I. Subject Matter Jurisdiction

The fundamental question raised by defendants' motions is whether state and/or federal jurisdiction exists over the subject matter contained in the indictments. The court concludes that the state and federal courts have concurrent criminal jurisdiction over the matters at hand.

Defendants challenge the subject matter jurisdiction of this court over the charges brought. Defendants maintain that the reservation is a sovereign territory, the jurisdiction over which is governed by treaties with the United States. They cite the Treaty of Fort Harmar of 1789, entered into by the United States and the Six Na-

tions of the Iroquois confederacy.[1] According to the defendants, the Iroquois ceded jurisdiction only over robbery and murder to the United States, and in five subsequent treaties with the United States, made no further grant of any authority over the Indian nations either to the United States or the State of New York.

In addition, defendants seem to contend that the federal court lacks jurisdiction over any crime not enumerated in 18 U.S.C. § 1153(a). Federal jurisdiction over these crimes is contained in 18 U.S.C. § 1152.

Defendants also claim that Congress has ceded *exclusive* criminal jurisdiction over Indian country in the State of New York to the state, pursuant to 25 U.S.C. § 232, thus divesting the United States of jurisdiction over the charges.

■ It should be noted at the outset that the sovereignty retained by native American tribes is limited. *United States v. Wheeler*, 435 U.S. 313, 323, 98 S.Ct. 1079, 1086, 55 L.Ed.2d 303 (1978). It may be divested by federal law or when inconsistent with the overriding interests of the federal government. *Washington v. Confederated Tribes*, 447 U.S. 134, 152–53, 100 S.Ct. 2069, 2081–81, 65 L.Ed.2d 10 (1980). In sum, while the notion of tribal sovereignty is often given lip service, the Indian tribes enjoy only that sovereignty which Congress is willing to tolerate:

The sovereignty that Indian Tribes retain is of a unique and limited character. It only exists at the sufferance of Congress and is subject to complete defeasance. *Wheeler*, 435 U.S. at 323, 98 S.Ct. at 1086.

■ Quite frankly, the Supreme Court has acknowledged that Congress may, on its own, abrogate or modify treaties with Indian nations. *Lone Wolf v. Hitchcock*, 187 U.S. 553, 566, 23 S.Ct. 216, 221, 47 L.Ed. 299 (1903). Moreover, Congress may pass a general jurisdictional law which would apply to Indian country even though it has not specified which treaties were modified or abrogated in the wake of the law passed. *Washington v. Yakima Indian Nation*, 439 U.S. 463, 478 n. 22, 99 S.Ct. 740, 750 n. 22, 58 L.Ed.2d 740 (1979).

■ Consequently, the authority over Indian lands possessed by the Indian nations, the United States, and the individual states is determined by acts of Congress. Only those matters not covered by federal statute may still be governed by treaty. Since the charges involved in the present case are the subjects of the federal statutes in question, any treaty provisions are superseded by those statutes. Thus, we may confine our analysis to interpretation of the statutes.

■ Defendants argue that the Major Crimes Act, 18 U.S.C. §§ 1152[2] and 1153,[3] enumerates the only crimes over which the United States has jurisdiction in Indian country. However, numerous courts have held that Section 1152 does not apply to

---

1. Counsel for the government notes that representatives of the Mohawk tribe, of which defendants are members, were absent when the treaty was signed, and therefore they are not signators to the agreement. Considering the development of law regarding treaties with Indian nations, *infra*, the importance of this treaty is not material to the question of jurisdiction.

2. Title 18 U.S.C. § 1152 reads:

Except as otherwise provided by law, the general laws of the United States as to the punishment of offenses committed in any place within the sole and exclusive jurisdiction of the United States, except the District of Columbia, shall extend to the Indian country.
This section shall not extend to offenses committed by one Indian against the person or property of another Indian, nor to any Indian committing any offense in the Indian country

who has been punished by the local law of the tribe, or to any case where, by treaty stipulations, the exclusive jurisdiction over such offenses is or may be secured to the Indian tribes respectively.

3. Title 18 U.S.C. § 1153 reads, in pertinent part: (a) Any Indian who commits against the person or property of another Indian or other person any of the following offenses, namely, murder, manslaughter, kidnaping, maiming, a felony under chapter 109A, incest, assault with intent to commit murder, assault with a dangerous weapon, assault resulting in serious bodily injury, arson, burglary, robbery, and a felony under section 661 of this title within the Indian country, shall be subject to the same law and penalties as all other persons committing any of the above offenses, within the exclusive jurisdiction of the United States.

federal crimes of "general applicability," but only to federal enclave statutes. As explained in *United States v. Blue*, 722 F.2d 383 (8th Cir.1983):

18 U.S.C. 1152 *is not a predicate for general federal criminal jurisdiction in Indian country*. Rather the scope of section 1152 is limited to the applicability or nonapplicability of federal enclave laws, those laws passed by the federal government in exercise of its police powers over federal property and now defined in the United States Code in terms of "special maritime and territorial jurisdiction of the United States," 18 U.S.C. 7.

*Id.* at 385 (emphasis added). In other words, 18 U.S.C. § 1152 is not the vehicle through which generally applicable criminal statutes are applied to Indian reservations. These statutes, including 15 U.S.C. § 1175, 18 U.S.C. § 1955, and 18 U.S.C. § 1166, apply of their own accord.

■ Defendants also argue that Congress, through 25 U.S.C. § 232,[4] has ceded *exclusive* general criminal jurisdiction to the State of New York. There is no federal court decision which squarely addresses the issue of whether the statute gives *exclusive* criminal jurisdiction to the courts of New York. Defendants' argument is arguably supported, however, by some state court decisions and dicta in some federal court decisions.

In *People v. Boots*, 106 Misc.2d 522, 434 N.Y.S.2d 850 (Sup.Ct. Franklin County 1980), the court held, after review of the legislative history of the statute, "that 25 U.S.C. section 232 was and is a valid surrender of federal criminal jurisdiction over Indians within the borders of New York State." *Boots*, 106 Misc.2d at 525, 434 N.Y.S.2d at 853. In *Oneida Indian Nation v. County of Oneida*, 414 U.S. 661, 679, 94 S.Ct. 772, 783, 39 L.Ed.2d 73 (1974), the court stated:

We are also aware that New York and federal authorities eventually reached partial agreement in 1948 when criminal jurisdiction over New York Indian reservations was ceded to the State. 62 Stat. 1224, 25 U.S.C. § 232.

*See also United States v. Devoian Gas and Oil Co.*, 424 F.2d 464, 468 (2d Cir.1970) ("25 U.S.C. 232 and 233 relinquished the criminal and civil jurisdiction of the United States over New York Indians"); *cf. People v. Edwards*, 78 A.D.2d 582, 432 N.Y. S.2d 567 (4th Dept.1980) (holding that New York has jurisdiction to try an Indian who is charged with murdering another Indian on a New York Indian reservation, but not stating that New York had *exclusive* jurisdiction).

However, since neither state court decisions nor dicta are controlling this court will consider the question *de novo*.

Prefatorily, it is a cardinal rule of statutory construction that "the starting point for interpreting a statute is the language of the statute itself." *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). There are two phrases in the language of 25 U.S.C. § 232 which lead to the conclusion that the statute confers jurisdiction on the State of New York, but that the grant is not exclusive. Noticeably absent from the phrase "[t]he State of New York shall have jurisdiction over offenses ..." is an adjective, such as "exclusive," "complete," or "sole," modifying jurisdiction.

The statute also provides that the state shall have jurisdiction "to the same extent as the courts of the State have jurisdiction over offenses committed elsewhere within the State as defined by the laws of the State...." The meaning of this phrase on its face is that the extent of the grant of criminal jurisdiction is that the laws of the state apply in Indian country just as they do in any other part of the state. That reading certainly does not preclude federal jurisdiction.

Furthermore, an additional maxim of statutory construction is that "repeals by

---

4. Title 25 U.S.C. § 232 reads, in pertinent part: The State of New York shall have jurisdiction over offenses committed by or against Indians on Indian Reservations within the State of New York to the same extent as the Courts of the State have jurisdiction over offenses committed elsewhere within the state....

implication are not favored." *Randall v. Loftsgaarden,* 478 U.S. 647, 661, 106 S.Ct. 3143, 3151, 92 L.Ed.2d 525 (1986). Thus, absent a clear statement from Congress that it granted exclusive jurisdiction to the state, any repeal of federal criminal jurisdiction over statutes of general applicability would be by implication.

## II. Title 18 U.S.C. § 1955

Defendants move to dismiss the counts under 18 U.S.C. § 1955[5] on the alternate grounds that: (1) 18 U.S.C. § 1955 has been preempted as it relates to prosecutions occurring on "Indian country" by the Indian Gaming Regulatory Act, 25 U.S.C. § 2701 *et seq.,* and (2) that a necessary element of the statute, namely that there has been a violation of an underlying state gambling law, has not been set forth in the indictment.

### A. Preemption of 18 U.S.C. § 1955

■ Defendants contend that Title 18 U.S.C. § 1955 has been preempted by the enactment of the Indian Gaming Regulatory Act, Title 25 U.S.C. § 2701 *et seq.* ("IGRA"), particularly by the amendment of the federal criminal code under the IGRA at 18 U.S.C. § 1166.

The IGRA was enacted, effective October 17, 1988, to establish a federal regulatory system for gaming on Indian lands. The congressionally stated purposes for the Act are (1) to provide a statutory basis for the operation of gaming by Indian tribes to promote tribal economic development, self-sufficiency, and strong tribal government; (2) to provide a statutory basis for the regulation of gaming by Indian tribes adequate to guard against organized crime influences, and to ensure that the tribes are the primary beneficiaries of the gaming; and (3) to establish independent federal regulatory authority and federal standards for gaming on Indian lands. 25 U.S.C. § 2702.

Toward these ends, gaming is broken down into three categories under the Act. Class I gaming is social games for prizes of minimal value or traditional forms of Indian gaming engaged in as part of tribal ceremonies or celebrations. 25 U.S.C. § 2703(6). Class II gaming is bingo and similar games including "pull-tabs, lotto, punch boards, tip jars and instant bingo," and certain card games that are explicitly authorized by the state or not explicitly prohibited by the state. 25 U.S.C. § 2703(7)(A). Class III gaming is all other types of gaming not listed in Class I or Class II, including "banking card games" such as blackjack, slot machines, and other casino-type gambling. 25 U.S.C. § 2703(7)(B).

The Indian tribes are granted exclusive jurisdiction over Class I gaming. 25 U.S.C. § 2710(a)(1). The Indian tribes also have jurisdiction over Class II gaming, although the IGRA grants the Indian Gaming Commission, a federal entity, the power to regulate Class II gaming. 25 U.S.C. § 2710(a)(2) and (b)(1). Class III gaming is permissible only if it is (1) authorized by a tribal ordinance or resolution; (2) located in a state that permits such type of gaming for any purpose by any person, organization or entity; and (3) conducted in accord-

---

5. 18 U.S.C. § 1955 entitled "Prohibition of illegal gambling businesses" states in applicable part:

(a) Whoever conducts, Finances, manages, supervises, directs, or owns all or part of an illegal gambling business shall be fined not more than $20,000 or imprisoned not more than five years, or both.

(b) As used in this section—

(1) "illegal gambling business" means a gambling business which—

(i) *is a violation of the law of the State or political subdivision in which it is conducted;*

(ii) involves five or more persons who conduct, finance, manage, supervise, direct, or own all or part of such business; and

(iii) has been or remains in substantially continuous operation for a period in excess of thirty days or has a gross revenue of $2,000 in any single day.

(2) "gambling" includes but is not limited to pool-selling, bookmaking, maintaining slot machines, roulette wheels or dice tables, and conducting lotteries, policy, bolita or numbers games, or selling chances therein.

(3) "State" means any State of the United States, the District of Columbia, the Commonwealth of Puerto Rico, and any territory or possession of the United States....

ance with a compact negotiated between the Indian tribe and the state. 25 U.S.C. § 2710(d)(1).

Criminal penalties for illegal gaming in Indian country are codified at 18 U.S.C. §§ 1166–68. Section 1166 [6] provides, *inter alia*, that acts involving gambling in Indian country, "although not made punishable by any enactment of Congress," are nevertheless punishable if they violate state licensing, regulatory or prohibitory gambling laws. 18 U.S.C. § 1166(b).

A violation of state law also is one element of a violation of 18 U.S.C. § 1955. Defendants maintain that both statutes are "assimilative" in nature, making a violation of state law punishable under federal gambling statutes. Thus, defendants urge, 18 U.S.C. § 1166, enacted as part of the new IGRA, preempts 18 U.S.C. § 1955. Defendants further argue that the language of the IGRA and the legislative history of the Act indicate it was intended to preempt all federal criminal statutes involving gambling except for 15 U.S.C. § 1175, which prohibits the use of specified gambling devices on Indian lands.[7] All other prosecutions for violations of gambling laws on

Indian lands must now be brought pursuant to 18 U.S.C. § 1166, defendants maintain. It is the opinion of the court that the IGRA does not preempt 18 U.S.C. § 1955 or other federal gambling statutes existing before the enactment of the IGRA. Therefore, the motions to dismiss the counts of the indictments which allege violations of 18 U.S.C. § 1955 on these grounds are denied.

Regarding defendants' first argument, that Sections 1166 and 1955 both make violations of state law federal offenses and thus Section 1166 must preempt Section 1955, the court finds that, to the contrary, the statutes have distinctly different objectives. Section 1166 makes punishable a violation of state gambling law in Indian country that is not otherwise punishable under a federal statute. Section 1955, titled "Prohibition of Illegal Gambling Businesses," requires not only that the business violate state law, but that it involve five or more persons, and remain in substantially continuous operation or have daily revenue in excess of $2,000. It is clear that 18 U.S.C. § 1955 is a special statute that targets large gambling operations for federal

6. Title 18 U.S.C. § 1166, titled "Gambling in Indian Country," reads:

(a) Subject to subsection (c), for purposes of Federal law, all State laws pertaining to the licensing, regulation, or prohibition of gambling, including but not limited to criminal sanctions applicable thereto, shall apply in Indian country in the same manner and to the same extent as such laws apply elsewhere in the State.

(b) Whoever *in Indian country is guilty of* any act or omission involving gambling, whether or not conducted or sanctioned by an Indian tribe, which, although not made punishable by any enactment of Congress, would be punishable if committed or omitted within the jurisdiction of the State in which the act or omission occurred, under the laws governing the licensing, regulation, or prohibition of gambling in force at the time of such act or omission, shall be guilty of a like offense and subject to a like punishment.

(c) For the purpose of this section, the term "gambling" does not include—

(1) class I gaming or class II gaming regulated by the Indian Gaming Regulatory Act, or

(2) class III gaming conducted under a Tribal–State compact approved by the Secretary of the Interior under section 11(d)(8) of the Indian Gaming Regulatory Act that is in effect.

(d) The United States shall have exclusive jurisdiction over criminal prosecutions of violations of State gambling laws that are made applicable under this section to Indian country, unless an Indian tribe pursuant to a Tribal–State compact approved by the Secretary of the Interior under section 11(d)(8) of the Indian Gaming Regulatory Act, or under any other provision of Federal law, has consented to the transfer to the State of criminal jurisdiction with respect to gambling on the lands of the Indian tribe.

7. Title 15 U.S.C. § 1175 reads:

It shall be unlawful to manufacture, recondition, repair, sell, transport, possess, or use any gambling device in the District of Columbia, in any possession of the United States, within Indian country as defined in section 1151 of Title 18 or within the special maritime and territorial jurisdiction of the United States as defined in section 7 of Title 18.

The term "gambling device" is defined in 15 U.S.C. § 1171. Gambling devices are (1) slot machines or other similar devices; (2) other machines or mechanical devices, such as roulette wheels, designed and manufactured primarily for use in connection with gambling; and (3) subassemblies or essential parts of such machines.

prosecution. The goals of 18 U.S.C. §§ 1166 and 1955 are distinct, and the argument that one must preempt the other on the basis of their similarity must fail.

Defendants' arguments that the text of the IGRA and its legislative history indicate that it is intended to preempt other federal gambling statutes as they relate to Indian country are not compelling.

Defendants note initially a passage from the Senate Report which states that the IGRA was intended to "expressly preempt the field in the governance of gaming activities on Indian lands." Senate Report No. 100–446, 1988 U.S.Code Cong. & Admin. News 3071, 3076. While this statement seems supportive of defendants' position on its face, it must be read in context with the statement that follows it in the Senate Report: "Consequently, Federal courts should not balance competing Federal, State, and tribal interests to determine the extent to which various gaming activities are allowed." *Id.* Thus, the Senate apparently intended that interrelation of federal, state and tribal laws would be governed by the Act, and not by previously employed methods, including the "prohibitory/regulatory" test addressed *infra*. This evidences no intention to eradicate existing federal or state laws governing gambling.

Defendants also point to the language in 25 U.S.C. § 2710(b)(1), which states, in pertinent part:

An Indian tribe may engage in, or license or regulate, class II gaming on Indian lands within such tribe's jurisdiction, if—

(A) such Indian gaming is located within a State that permits such gaming for any purpose by any person, organization or entity (and such gaming is *not otherwise specifically prohibited on Indian lands by Federal law*).... (emphasis added).

The Senate Report notes that the phrase: "not otherwise prohibited by Federal law" refers to gambling that utilizes me-

chanical devices as defined in 15 U.S.C. 1175. That section prohibits gambling devices on Indian lands but does not apply to devices used in connection with bingo and lotto. It is the Committee's intent that with the passage of this act, *no other Federal statute*, such as those listed below [including 18 U.S.C. § 1955], *will preclude the use of otherwise legal devices used solely in aid of or in conjunction with bingo or lotto or other such gaming on or off Indian lands.*

Senate Report, 1988 U.S.Code Cong. & Admin.News at 3082 (emphasis added).

The importance of this statement is its indication that Congress intended that no federal statute should prohibit the use of gambling devices for *bingo or lotto*, which are legal class II games under the IGRA. Thus, the IGRA makes 15 U.S.C. § 1175, and other statutes, including 18 U.S.C. § 1955, inapplicable to *class II bingo and lotto gaming.* This statement of Congress' intention indicates not that 18 U.S.C. § 1955 is to be preempted by the IGRA, but in fact that it is to remain in effect, except for its potential application to class II gaming.

### B. *Failure to State a Necessary Element*

■ 18 U.S.C. § 1955 prohibits persons from engaging in an "illegal gambling business" which involves five or more persons and is in continuous operation for over thirty days or has a gross revenue of $2,000 in any single day. An element of the federal crime is that the gambling activity must be in "violation of the law of the state ... in which it is conducted." 18 U.S.C. § 1955(b)(1)(ii). Defendants assert that the indictment, which alleges that the defendants violated N.Y.Penal Law §§ 225.05,[8] and 225.30(1)(2) and (3),[9] does

---

8. New York Penal Law § 225.05 "Promoting gambling in the second degree" states:

A person is guilty of promoting gambling in the second degree when he knowingly advances or profits from unlawful gambling activity.

Promoting gambling in the second degree is a class A misdemeanor.

9. New York Penal Law § 225.30 "Possession of a gambling device" states:

A person is guilty of possession of a gambling device when, with knowledge of the character thereof, he manufactures, sells, transports, places or possesses, or conducts or negotiates

not allege a violation of a state statute which is sufficient to serve as an element of the federal offense.

The complex argument put forward by the defendants is as follows: (1) New York State's authority to regulate activities by Indians within Indian country is limited to that authority which has been expressly so provided by Congress, (2) the Congressional grants of authority to the State of New York do not permit the State of New York to govern activity which is described as "civil/regulatory" in nature on Indian reservations, (3) N.Y.Penal Law §§ 225.05 and 225.30 is civil/regulatory, as opposed to criminal/prohibitory, in nature, (4) violation of this civil/regulatory statute cannot serve as an element of 18 U.S.C. § 1955, and (5) the indictment as it relates to charges asserted pursuant to 18 U.S.C. § 1955 must be dismissed for failure to allege a necessary element.

The defendants are correct in their assertion that Indian tribes retain "attributes of sovereignty" which are subject to defeasance only by an enactment of the Federal Government and not the States. *Washington v. Confederated Tribes of the Colville Indian Reservation,* 447 U.S. 134, 154, 100 S.Ct. 2069, 2081, 65 L.Ed.2d 10 (1980). "It is clear, however, that state laws may be applied to tribal Indians on their reservations if Congress has expressly so provided." *California v. Cabazon Band of Mission Indians,* 480 U.S. 202, 107 S.Ct. 1083, 1087, 94 L.Ed.2d 244 (1987).

■ New York has been granted broad criminal jurisdiction by Congress over offenses committed by or against Indians on Indian country within the State. *See* 25 U.S.C. § 232.[10] However, the federal grant of civil jurisdiction was more circumscribed. 25 U.S.C. § 233 provides New

York with jurisdiction over private civil litigation but does not appear to grant general civil regulatory authority to the State: reserving such authority to the federal government and to the Indians themselves. The grant of civil and criminal authority to New York in 25 U.S.C. §§ 232 and 233 is very similar that which was granted to a number of western states in Public Law 280, 18 U.S.C. § 1162, 28 U.S.C. § 1360. The Supreme Court has determined that Public Law 280 does *not* constitute a grant of general regulatory authority to the states to which it applies. *See Bryan v. Itasca County,* 426 U.S. 373, 385, 388–90, 96 S.Ct. 2102, 2109, 2110–11, 48 L.Ed.2d 710 (1976); *California v. Cabazon Band of Mission Indians,* 480 U.S. 202, 107 S.Ct. 1083, 1088, 94 L.Ed.2d 244 (1987). And, due to the similarities between the statutes, the same is true with respect to the grant of civil jurisdiction found in 25 U.S.C. § 233. *See People v. Snyder,* 141 Misc.2d 444, 532 N.Y.S.2d 827, 830–31 (Co.Ct.1988).

As a result of the limited grant civil regulatory authority embodied in Pub.L. 280, the Supreme Court, when analyzing whether a State may enforce an ordinance against Indians for actions which occur on Indian reservations, has embraced what has generally been termed a "criminal/prohibitory" vs. "civil/regulatory" mode of analysis. Under this analytical framework:

> if the intent of state law is generally to prohibit certain conduct, it falls within Pub.L. 280's grant of criminal jurisdiction, but if the state law generally permits the conduct at issue, subject to regulation, it must be classified as civil/regulatory and Pub.L. 280 does not authorize its enforcement on an Indian reservation. The shorthand test is whether

any transaction affecting or designed to affect ownership, custody or use of:
1. A slot machine; or
2. Any other gambling device, believing that the same is to be used in the advancement of unlawful gambling activity.
3. A coin operated gambling device with intent to use such device in the advancement of unlawful gambling activity.
Possession of a gambling device is a class A misdemeanor.

**10.** 25 U.S.C. § 232 states in applicable part:
The State of New York shall have jurisdiction over offenses committed by or against Indians on Indian reservations within the State of New York to the same extent as the courts of the State have jurisdiction over offenses committed elsewhere within the State as defined by the laws of the State....

the conduct at issue violates the State's public policy.

*California v. Cabazon Band of Mission Indians*, 107 S.Ct. at 1088. In *Cabazon* the Court held that the State of California could not prosecute Indians for the operation of tribal sponsored bingo and card gaming on Indian reservations because California's laws with respect to gambling were civil/regulatory in nature. In making the determination, that California regulates rather than prohibits gambling, the Court noted that the state operated a lottery, permitted horse-race betting, and allowed bingo and other card games to be played widely. *Id.* at 1089.

The defendants assert that New York Penal Law § 225.05 and 225.30 is civil/regulatory in nature and therefore cannot be used as an element of the *federal* crime. The Supreme Court in *Cabazon* expressly declined to decide whether State laws which are incorporated as an element of a federal crime are subject to the same civil/regulatory—criminal/prohibitory analysis. 107 S.Ct. at 1091. The Ninth Circuit has held that such an analysis applies to 18 U.S.C. § 1955, *Cabazon Band v. County of Riverside*, 783 F.2d 900, 903 (9th Cir.1986) *aff'd on other grounds* 480 U.S. 202, 107 S.Ct. 1083, 94 L.Ed.2d 244 (1987), while the Sixth Circuit has rejected this view. *See United States v. Dakota*, 796 F.2d 186, 188–89 (6th Cir.1986). The analysis presented by the Sixth Circuit appears to be more compelling. However, assuming *arguendo* that the civil/regulatory—criminal/prohibitory analysis applies, this court still holds that the violations of New York Law alleged in the indictment present conduct which is criminal in nature.

It is true, as defendants assert, that New York permits horse-race betting, sponsors a lottery, permits bingo, and allows certain organizations to operate "casino nights" as part of their fund raising activities. Defendants argue that the since New York permits the use of games of chance in this manner, it only regulates gambling as opposed to criminally prohibiting such activities. However, New York Law as well as New York public policy strongly discourages the type of commercialized gambling

activity for individual profit which is alleged in the indictment. The gaming activity is alleged to have involved the use and possession of slot machines—a device whose use is flatly prohibited in New York and whose possession is allowed only if an antique or assembled in state for out of state sale. *See* N.Y.Penal Law §§ 225.30 and 225.32. Moreover, the prohibitions contained in N.Y.Penal Law §§ 225.05 and 225.30 are listed in the *penal* law; violation of these statutes being a Class A misdemeanor punishable by up to one year in prison. New York's General Municipal law § 185 *et seq.*, while allowing "casino night" fund raising, does so only where all the proceeds go to the benefit and use of charitable causes. Gen.Mun.L. § 189 places strict limits, at low dollar amounts, on the amount of any prize or pot, as well as any individual bet; regulates who may sponsor such events; regulates who may provide the gaming devices; limits to five the number of different games which may be conducted; prohibits any person from being paid for operating or managing any of the games, and makes the unauthorized conduct of any game of chance, even by a charitable organization, punishable as a misdemeanor.

Finally, the allegations against the defendants charged under 18 U.S.C. § 1955 portray extensive and on-going high stake gambling enterprises for individual rather than tribal profit. As such, this conduct falls more properly within the "criminal/prohibitory" side of New York law and public policy. *See People v. Snyder*, 141 Misc.2d 444, 532 N.Y.S.2d 827, 831–32 (Co. Ct.1988), *see e.g.*, *United States v. Farris*, 624 F.2d 890 (9th Cir.1980) (a gambling enterprise operated by individual Indians which involved blackjack, poker, and dice, gaming violated public policy of State of Washington and thus United States could enforce 18 U.S.C. § 1955 against Indians). Therefore, this court concludes that New York Penal Law §§ 225.05 and 225.30 is an appropriate element of an indictment pursuant to 18 U.S.C. § 1955.

Accordingly, having determined 18 U.S.C. § 1955 not preempted by 25 U.S.C.

§ 2701 *et seq.* and that the indictments set forth the necessary elements therein, the defendants' motion to dismiss relative thereto is denied.

## III. Constitutionality of 15 U.S.C. §§ 1175 and 1176

■■■Defendants contend that 15 U.S.C. §§ 1175 and 1176 are based upon impermissible race classifications, and thus violate the Equal Protection Clause contained in the Fifth Amendment. This argument can be quickly dismissed.

Section 1175 makes it unlawful to use or possess "any gambling device in the District of Columbia, in any possession of the United States, *within Indian country ...* or within the special maritime or territorial jurisdiction of the United States ..." (emphasis added). Section 1176 merely enumerates the penalties for a violation of Section 1175.

Section 1175 is not based upon impermissible race classifications. It makes it unlawful for *anyone,* including Indians, to use or possess gambling devices, in any of the specified jurisdictions, including Indian country. There is no basis for an equal protection claim when Indians are subjected to the same body of law as any other individual, Indian or non-Indian, for a crime committed in Indian country. *Keeble v. United States,* 412 U.S. 205, 93 S.Ct. 1993, 1997, 36 L.Ed.2d 844 (1973); *United States v. Antelope,* 430 U.S. 641, 97 S.Ct. 1395, 1399, 51 L.Ed.2d 701 (1977).

Moreover, it is well-settled that federal legislation with respect to Indian tribes, although it may relate to Indians as such, is not based upon impermissible racial classifications. Rather, it is permissible governance of "once-sovereign political communities." *Antelope,* 97 S.Ct. at 1399.

Thus, the motion to dismiss the counts of the indictments charging violations of 15 U.S.C. §§ 1175 and 1176 on this ground must be denied.

## IV. Constitutionality of IGRA

The defendants raised a number of constitutional objections to the Indian Gaming Regulatory Act, 25 U.S.C. § 2701 *et seq.* at oral argument. This court has considered the arguments of counsel and find them to be without merit as applied to the facts of these criminal prosecutions. Defendants assert that certain portions of the IGRA violate the Constitutional Separation of Powers doctrine. Another section of the IGRA is attacked on the basis that it violates the Equal Protection Clause in that it treats some Indian Tribes differently than others. However, these provisions are not at issue here and, therefore, the constitutional questions are not ripe for adjudication. In any event, the IGRA contains a savings provision, codified at 25 U.S.C. § 2721, which provides that "[i]n the event that any section or provision of this chapter, or amendment, made by this chapter, is held invalid, it is the intent of Congress that the remaining sections or provisions of this chapter, and amendments made by this chapter, shall continue in full force and effect." Even if this court found these sections to be constitutionally invalid the remaining provisions would stand.

■■■ Defendants also assert that the language of the IGRA with respect to "lotto" or "lotteries" is so vague as to violate the Due Process Clause. This vagueness assertedly fails to place the defendants on notice of the potential for criminal liability. The allegations of the indictment go well beyond the assertion that the defendants engaged in "lotto" type gambling and in many instances do not assert that "lotto" gaming was involved. Therefore, any slight vagueness which may exist in this statute is insufficient to cause the entire indictment to be dismissed. Defendants' motion in this respect is denied.

■■■ Defendants also raise the question of whether the State of New York has retained its criminal jurisdiction over gambling activities after the enactment of the IGRA. Most pertinent to the issue are two provisions contained in 18 U.S.C. § 1166. The first, 18 U.S.C. § 1166(a), states:

Subject to subsection (c) [licensed approved gambling], for purposes of Federal law, all State laws pertaining to the *licensing, regulation,* or *prohibition* of

gambling, including but not limited to criminal sanctions applicable thereto, shall apply in Indian country to the same extent as such laws apply elsewhere in the State.

18 U.S.C. § 1166(a) (emphasis added).

The question of jurisdiction under the IGRA is addressed in 18 U.S.C. § 1166(d), which states:

The United States shall have *exclusive jurisdiction* over criminal prosecutions of violations of State gambling laws that are made applicable under this section to Indian country....

18 U.S.C. § 1166(d) (emphasis added). The language of the statute leaves open the question of which gambling laws are made applicable *under this section* to Indian country. The criminal statutes prohibiting gambling activity in the State of New York have been applicable to Indian country since 1948, when 25 U.S.C. § 232 was enacted, and thus were not "made applicable under this section" to Indian country.

Support for this interpretation is contained in the Senate Committee Report on the IGRA, which states:

[I]t is the intention of the Committee that nothing in the provision of this section or in this act will supersede any specific restriction or *specific grant of Federal authority or jurisdiction to a State which may be encompassed in another Federal statute....*

1988 U.S.Code Cong. & Admin.News at 3082 (emphasis added). This statement would certainly apply to 25 U.S.C. § 232, the grant of criminal jurisdiction over Indian country to the State of New York. Thus, New York has retained its criminal jurisdiction over gambling offenses under the IGRA.

## V. "Indian Country"

■ Defendants have moved to dismiss the claims under 15 U.S.C. § 1175 on the basis that the St. Regis Reservation is not "Indian Country" for purposes of prosecutions under that statute. 15 U.S.C. § 1175 states:

It shall be unlawful to manufacture, recondition, repair, sell, transport, possess,

or use any gambling device ... *within Indian country as defined in section 1151 of Title 18....*

For purposes of the present prosecution, the elements of a violation of 15 U.S.C. § 1175 are (1) possession and use, (2) of a gambling device, (3) within Indian country. In response to the defendants' motion the government asserts that whether or not the St. Regis Reservation is Indian country is an issue of fact for the jury. It would appear, however, that the factual question for the jury is whether the incident took place *within* Indian country (i.e. within the boundaries of the St. Regis Reservation as opposed to say, downtown Syracuse) while the question of whether the St. Regis Reservation is itself Indian country as that term is defined in 18 U.S.C. § 1151 is a question of law to be determined by this court. 18 U.S.C. § 1151, which defines the term "indian country" states in applicable part:

"Indian country", as used in this chapter, means (a) all land within the limits of any Indian reservation under the jurisdiction of the United States Government, notwithstanding the issuance of any patent, and, including rights-of-way running through the reservation, (b) all dependent Indian communities within the borders of the United States whether within the original or subsequently acquired territory thereof, and whether within or without the limits of a state, and (c) all Indian allotments, the Indian titles to which have not been extinguished, including rights-of-way running through the same.

This definition of Indian Country is extensive and, barring any unforeseen circumstances, clearly would encompass the portion of the St. Regis Reservation which is within the borders of the United States.

Defendants admitted at oral argument that the St. Regis reservation is within New York State and that the indictment alleges that gambling activity took place on the reservation. However, defendants assert that due to the "unique historical and legal character" of the St. Regis reservation it is not Indian country as that term is defined in 18 U.S.C. § 1151. Defendants'

argument as to why the St. Regis reservation is not Indian country is puzzling. At times the defendants assert that the reservation is a Canadian Community or that certain portions of the reservation are within the Dominion of Canada. The defendants also make an argument which contradicts their theory that the reservation is under the jurisdiction of Canada. Though it is hard to follow from the defendants' memorandum of law, defendants apparently assert that a portion of the reservation, though by treaty located within the State of New York, is somehow not within the jurisdiction of the United States. The defendants do not point out any treaty language which would support this rather unique proposition.[11]

The essential error in the defendants' argument is that the sovereignty retained, at this date, by Indian tribes has become almost completely subject to the authority of Congress. The Supreme Court has held that tribal sovereignty is subject to defeasance by federal statute. *See U.S. v. Wheeler*, 435 U.S. 313, 323, 98 S.Ct. 1079, 1086, 55 L.Ed.2d 303 (1978); *Washington v. Confederated Tribes*, 447 U.S. 134, 152–53, 100 S.Ct. 2069, 2080–81, 65 L.Ed.2d 10 (1980). The Court has gone so far as to acknowledge that Congress, acting alone, may dissolve or modify treaties with Indian Nations. *See Lone Wolf v. Hitchcock*, 187 U.S. 553, 566, 23 S.Ct. 216, 221, 47 L.Ed. 299 (1903). Moreover, it is within the authority of Congress to enact laws of general application or which apply specifically to Indian lands without specifying which treaties with Indian Nations were effected by the new statute. *See Washington v. Yakima Indian Nation*, 439 U.S. 463, 478 n. 22, 99 S.Ct. 740, 750 n. 22, 58 L.Ed.2d 740 (1979). Given this framework it is clear, regardless of the history of any past treaty, that the Federal Government has the authority to place the St. Regis Reservation within the statutory definition of "Indian country" as set forth in 18 U.S.C. § 1151, and has done the same. Therefore, this court must deny defendants motion to dismiss the indictment with respect to charges under 15 U.S.C. § 1175; the St. Regis reservation is Indian country for purposes of that statute. However, an element of 15 U.S.C. § 1175, namely that the activity took place *within* the reservation, still must be proven by the government at trial.

## VI. Grace Period Under IGRA

■ The defendants also move for dismissal of the counts asserted pursuant to 15 U.S.C. § 1175 on the theory that the alleged activity is legal due to a provision of the recently enacted Indian Gaming Regulatory Act (IGRA), 25 U.S.C. § 2701 *et seq.* A complicated provision of the IGRA allows Indian tribes to obtain a one year grace period during which the operation of electronic games of chance, including slot machines, may continue while the tribes have the opportunity to negotiate tribal-state compacts concerning the continued operation of such devices. *See* 25 U.S.C. § 2703(7)(D). Notwithstanding defendants' claim that the St. Regis Tribe has requested the negotiation of a tribal-state compact, their argument fails. A necessary prerequisite for the application of 25 U.S.C. § 2703(7)(D)'s one year grace period is that the gambling activity "was *legally* operated on Indian lands on or before May 1, 1988." *Id.* As discussed above, commercial gambling for profit as alleged in the indictment was not a lawful activity within New York State on May 1, 1988. In fact, such activity is criminally prohibited under the public policy of New York. Therefore, defendants' motion in this respect must be denied; a necessary element for the application of the one year grace period is missing.

---

**11.** The portion of defendants memorandum of law which sets forth this argument reads as follows:

"Ultimately, a treaty was negotiated between the Seven Nations of Canada and New York State on May 31, 1796. This treaty established the present New York portion of the reserve of St. Regis within the boundaries of New York State and was ratified by the U.S. Senate.

Thus, the physical, geographical location of the place upon which the charges set forth in the indictments allegedly occurred are not now, nor have they ever been ceded to the United States for any purpose. Insofar as the charges set out in the indictment are concerned, *a fortiori,* the U.S. District Court has no jurisdiction over the alleged offenses."

VII. Forcible Interference Under 18 U.S.C. § 111(a)(1)

 Defendant Anthony Laughing is charged with forcibly resisting or impeding officers of the New York State Police acting in cooperation with FBI agents in executing an arrest warrant, in violation of 18 U.S.C. §§ 111(a)(1) and 1114. The basis for the charge is that Laughing attempted to elude police officers in a high-speed chase before he was arrested.

Title 18 U.S.C. § 111(a)(1) states, in pertinent part:

> Whoever forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title [18 U.S.C. § 1114] while engaged in or on account of the performance of his official duties, shall be fined not more than $5,000 or imprisoned not more than three years, or both.

Title 18 U.S.C. § 1114 prohibits killing or attempting to kill any of a long list of federal employees and officers. That list includes officers or employees of the Federal Bureau of Investigation.

The government stipulated during oral argument on the motions that Laughing is not charged with a violation of Section 1114, but that it was included in Count IX of the Laughing indictment because it is incorporated by reference in 18 U.S.C. § 111(a)(1) to identify officers covered by Section 111(a)(1).

Defendant contended that the activities carried out by *state officers* are not covered by Section 111(a)(1). However, a state officer acting in cooperation with, and under the control of, federal officers, is protected by the coverage of 18 U.S.C. § 111. *United States v. Williamson,* 482 F.2d 508 (5th Cir.1973). The extent of the involvement of federal officers with the state police in the present case, as well as whether force was used to resist or impede said officers, are questions of fact which are reserved for trial.

IT IS SO ORDERED.