**The UNITED STATES of America**

v.

**KAKWIRAKERON a/k/a Arthur Montour, Defendant.**

No. 89–CR–158.

United States District Court, N.D. New York.

Feb. 22, 1990.

Seth Eben Shapiro, Corinth, N.Y., for defendant.

Frederick J. Scullin, Jr., U.S. Atty., Syracuse, N.Y., for U.S., John Duncan, Asst. U.S. Atty., of counsel.

MEMORANDUM–DECISION
AND ORDER

McCURN, Chief Judge.

*Introduction*

The defendant, Arthur Montour, has been indicted on charges of conspiracy, in violation of 18 U.S.C. § 371; use of a deadly weapon while aiding and abetting the forcible resistance to persons authorized to execute search warrants in violation of 18 U.S.C. § 2231(a) and (b) and 18 U.S.C. § 2; and using or carrying a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c)(1) and 18 U.S.C. § 2.

On November 28, 1989, the defendant moved to dismiss the indictment on various grounds, including the contention that the application of international law in general and the provisions of Final Act of the Conference on Security and Cooperation in Europe–Final Act ("Helsinki Accords") in par-

ticular, bar prosecution of the defendant. This court denied defendant's motion to dismiss. The defendant subsequently moved for reconsideration of that order based solely on his international law and Helsinki Accords argument, and the court determined to hear oral argument on the motion, which said argument was had before the court on February 15, 1990 after supplemental briefing by the parties.

### Discussion

The Final Act of the Conference on Security and Cooperation in Europe known as the "Helsinki Accords", was signed in Helsinki, Finland, on August 1, 1975, by the United States and 34 other nations. The Accords cover a wide range of topics reflecting political, military, economic, humanitarian, cultural and educational concerns of the signatory countries.

Defendant argues that provisions of the Accords recognizing the right to self-determination of peoples and the duty of nations to fulfill their obligations under international law bar prosecution of the defendant here. Specifically, defendant refers to the Treaty of Canandaigua, entered into by the United States and the Six Nations Confederacy in 1794, which he claims is binding on this case. Article VII of the Treaty states as follows:

> Lest the firm peace and friendship now established should be interrupted by the misconduct of individuals, the United States and Six Nations agree, that for injuries done by individuals on either side, no private revenge or retaliation shall take place; but, instead thereof, complaint shall be made by the party injured, to the other; By the Six Nations or any of them, to the President of the United States, or the Superintendent by him appointed; and by the Superintendent, or other person appointed by the President to the principal chiefs of the Six Nations, or of the nation to which the offender belongs; and such prudent measures shall then be pursued as shall be necessary to preserve our peace and friendship unbroken; until the legislature (or great council) of the United States shall make other equitable provision for that purpose.

According to the defendant, Article VII of the Treaty requires that the United States make formal complaint to the chiefs of the Six Nations before taking unilateral action against individuals. Under the Helsinki accords, defendant argues, the United States is bound to respect its treaty obligations and to abide by principles of international law. A cardinal tenet of international law, defendant asserts, is that one party may not, by unilateral legislative act, relieve itself of its treaty obligations. *See U.N. Conf. on the Law of Treaties*, Doc. A/CONF.39/27, May 23, 1969; *American Law Institute, Restatement of the Law, Second, Foreign Relations Law of the United States* (1965), part III, International Agreements, p. 430. In sum, the defendant contends that statutes unilaterally passed by Congress which relieve the United States of its treaty obligations, such as the statutes under which defendant is charged in the instant case, are in violation of the Helsinki Accords and international law. While defendant's arguments merit consideration, they must nevertheless be rejected.

In order for a treaty to be binding on the United States, it must be ratified by the Senate. The Helsinki Accords have not been ratified, and thus are not enforceable as a treaty. In fact, as the government correctly argues and defendant concedes, the Accords were not intended to be a binding treaty. *See Frolova v. Union of Soviet Socialist Republics*, 761 F.2d 370 (7th Cir.1985). As then-President Ford stated before signing the Accords:

> I would emphasize that the document I will sign is neither a treaty *nor is it legally binding on any particular state.* The Helsinki documents involve political and moral commitments aimed at lessening tension and opening further the lines of communication between the peoples of East and West.

73 Dept. of State Bull. 204, 205 (1975) (emphasis added). Defendant argues, however, that while the Accords may not be legally binding on their own, they are representative of existing international law,

and thus are enforceable as part of the laws of the United States. Defendant notes that the United States has set up a commission, the U.S. Commission on Security and Cooperation in Europe, which periodically meets to discuss progress on attaining the objectives of the Accords.

It is clear that United States courts are "bound by the law of nations, which is a part of the law of the land." *Filartiga v. Pena–Irala*, 630 F.2d 876, 887 (2d Cir.1980) (quoting *The Nereide*, 13 U.S. (9 Crach) 388, 422, 3 L.Ed. 769 (1815)). In the absence of a treaty, international law "may be ascertained by consulting the works of jurists, writing professedly on public law; or by the general usage and practice of nations; or by judicial decisions recognizing and enforcing that law." *Filartiga*, 630 F.2d at 880 (quoting *United States v. Smith*, 18 U.S. (5 Wheat.) 153, 160–61, 5 L.Ed. 57 (1820)). The Helsinki Accords, the objectives of which have received continued support from the signatory states, would certainly be indicative of the status of international law on self-determination of peoples and of the duty of nations to abide by their international obligations.

As this court has recently stated, however, it is compelled to follow the long line of decisions by the Supreme Court that, notwithstanding treaties signed with the Indian nations, the sovereignty retained by native American tribes is extremely limited. *United States v. Burns*, 725 F.Supp. 116, 120 (N.D.N.Y.1989) (citing *United States v. Wheeler*, 435 U.S. 313, 323, 98 S.Ct. 1079, 1086, 55 L.Ed.2d 303 (1978)). As the Court stated in *Wheeler:*

> The sovereignty that Indian Tribes retain is of a unique and limited character. It only exists at the sufferance of Congress and is subject to complete defeasance.

*Wheeler*, 435 U.S. at 323, 98 S.Ct. at 1086. Federal statutes of general applicability, such as the ones under which defendant is charged here, may abrogate or modify provisions of treaties with Indian nations, even though they do not specify which treaties are affected. *Burns*, 725 F.Supp. at 120; *Washington v. Yakima Indian Nation*, 439 U.S. 463, 478 n. 22, 99 S.Ct. 740, 750 n. 22, 58 L.Ed.2d 740 (1979). Thus, the status of the Treaty of Canandaigua, as far as this court is concerned, is as it exists as modified or abrogated by subsequent acts of Congress, including the statutes at question in the instant case.

Moreover, the provisions of the Helsinki Accords are phrased in generalities, creating obligations of the signatory countries and establishing goals which the nations will try to reach on their own. The Accords do not create judicially enforceable rights, especially those that could be asserted by private individuals. *Frolova*, 761 F.2d at 375–76; *cf. Ahmad v. Wigen*, 726 F.Supp. 389, 406 (E.D.N.Y.1989). As noted by the government at oral argument, the Accords do not have the legal force and effect to be used by the defendant as a defense to criminal prosecution. Thus, "[i]ndividuals aggrieved by the failure of nations to implement the Helsinki Accords will have to be content with the principle that violations of international agreements 'are normally to be redressed outside the courtroom.'" *Frolova*, 761 F.2d at 376 (quoting *Canadian Transport Co. v. United States*, 663 F.2d 1081, 1092 (D.C.Cir. 1980)).

Accordingly, defendant's motion for reconsideration is denied.